## In the Matter of HENRY CLAY LITTICK, an Attorney.

Second Department, February 4, 1929.

*Mortimer W. Byers*, for the motion.

*Charles H. Kelby*, opposed.

LAZANSKY, P. J. This matter comes before the court on the report of an official referee in disciplinary proceedings. No recommendation is made.

The respondent, who is thirty-four years of age, was admitted to the bar in 1922. In the petition presented to the court it is charged

that on many occasions he parted with valuable considerations to one Fabricant, who is not an attorney, as an inducement for the procuring for respondent demands and causes of action for personal injuries and otherwise, for the purpose of bringing actions thereon or of representing the claimants in pursuit of a civil remedy for the recovery of damages.

The facts as disclosed by the record are not in dispute, except as to one important item. Respondent began the practice of the law as a member of a firm of lawyers who were not engaged in negligence cases. In 1923 and 1924 he was a law lecturer at a university school of commerce. In 1924 he began the practice of law on his own account; also became an active member of the faculty of a law school, which position he continued to hold until 1928. Shortly after he began the practice of the law one Fabricant, who is now twenty-seven years of age, entered his office as a law student, later became a law clerk and continued as such until the commencement of this proceeding. For a period of three years Fabricant had brought to respondent's office fifty-five cases, of which nineteen were negligence cases. Fabricant received a percentage of respondent's fees, part of the time twenty-five to thirty per cent and a small salary, and later thirty-three and one-third per cent without salary. According to Fabricant's " guess," he received upwards of $1,000 a year out of the cases. No books or other records were produced to show the amounts of payments to or the salary of Fabricant, or the times when he was paid a salary. Negligence cases constituted the lesser portion of respondent's practice. Fabricant testified he did not " solicit " any of the cases for respondent. The real question in dispute is as to the intent with which a share of the fees was given by respondent to Fabricant. Petitioner asserts that it was given as an inducement for procuring cases or as a reward for having brought them, in violation of subdivision 2 of section 274 of the Penal Law, and of canons 27 and 28 of the Canons of Ethics of the American Bar Association, adopted by the Bar Association of the State of New York. Respondent claims it was given out of consideration for kindnesses and fidelity of Fabricant to him. In his answer to the petition, respondent alleges that what he gave to Fabricant was as a reward for his " devotion and faithfulness " and not as an inducement for procuring cases. Not a word is said in the answer about loans of money by Fabricant to respondent as an inducing cause for the sharing of fees. Fabricant testified that on two occasions when respondent was in financial distress he borrowed money and loaned it to him. Nothing is stated about the terms and amounts of these loans. Respondent testified to the loans in a general way, and also testified it was because of this

kindness and Fabricant's faithful service, especially at a time when Fabricant was not being paid, that he gave him part of his fees in cases which were brought to his office by Fabricant. He said that before the payments were made he had determined to reward Fabricant in some way. It may be believed that in some small degree respondent was induced to share his fees with Fabricant out of consideration of Fabricant's fidelity and help in a material way, but it is difficult to conclude that the primary purpose was other than to pay for the procurement of the cases. A majority of the court finds that the respondent shared his fees with Fabricant as an inducement to the latter to bring cases to the respondent's office. This conclusion is reached in a large measure by reason of the testimony of a young man, a law school graduate, who applied to respondent for a position in his office in answer to an advertisement. The young man was told by the respondent that he would not be able to pay him any stated salary, but that he would receive fifty per cent of the work that he brought into the office; that respondent had the same arrangement with Fabricant and that the latter had made a considerable amount more, on such basis, than he would have had if he had accepted the usual law clerk salary. When inquiry was made if such an arrangement was proper, the respondent stated " that it was not entirely ethical but that it was not wrong at all." It appears that it was not suggested that the applicant for the position was to solicit cases. In connection with this young man's testimony, the respondent said that if the young man thought that the arrangement made by respondent with Fabricant was similar to the arrangement which was contemplated with the young man, the young man was honestly mistaken, for the reason that there was no element of the relationship with Fabricant which was similar to that with the young man. Respondent said he was willing to concede that had he permitted himself to go so far as to consummate the arrangement with the young man, he would be guilty, he thought, of the charge which was being pressed against him with regard to Fabricant. He said he had stated before that he looked upon his relations with the young man as a very grave mistake, and he was glad that nothing came out of it. He conceded that with reference to the young man he had had an impure thought which was discontinued before it led to consummation.

This testimony clearly indicates that respondent's relationship with Fabricant was what the court has found it to be. It demonstrates that his claimed purpose of rewarding Fabricant was an assumed mental attitude rather than a fact. There is no proof that the respondent has been guilty of any wrongdoing other than this arrangement with Fabricant. It would, however, have shown

him in a better light had he produced books to show the extent of his financial relations with Fabricant.

Reference has been made in a case, decided herewith, as to the condition of affairs of the bar in connection with "ambulance chasing." With that in mind, and the fact that respondent has not, in so far as the proof discloses, in the slightest degree participated in the evils which are incident to "ambulance chasing" and that none of the cases procured by Fabricant was the result of solicitation, a majority of the court feel that the ends of justice will be served by suspending the respondent for a period of two years. Such a result cannot now be avoided, since the respondent knew that he was doing something that was illegal. As a teacher of those who were to serve in his chosen profession, where the highest standards of conduct are demanded, he showed himself weak in the face of the temptations of material gain. Such conduct cannot be tolerated any longer. The fine traditions of the bar must be maintained.

KAPPER, HAGARTY and CARSWELL, JJ., concur; RICH, J., dissents and reads for dismissal of the charges.

RICH, J. (dissenting). I am not in accord with the decision about to be rendered in this proceeding, and must, therefore, dissent.

It is clear to me that the evidence preponderates in favor of respondent's innocence, but assuming that I could agree with my learned associates on this vital question of fact, then I could not agree to the action to be taken, because I would regard it as being entirely too severe.

I cannot overlook his good character, the fidelity with which he has represented his clients, and the fact that his dealings, even with his adversaries, have been honorable.

He is charged with giving one Fabricant money for introducing him to a few persons requiring his assistance.

The respondent tells us that Fabricant had been a student under him in a school of commerce, and after he began practicing on his own account he took Fabricant in his office as a student. It appears that Fabricant devoted himself to respondent's service for several months without compensation. He tells us that Fabricant brought him business from time to time and it was done without compensation or any request or promise of compensation, and he says that it was because of the services Fabricant had rendered to him that he finally began to pay him twelve dollars a week, and the compensation was subsequently increased to fifteen dollars a week. This salary was for current services and was not intended as a reward for anything but the ordinary services of a typist and clerk, and it

seems to me that the truth of this statement is clearly shown. Besides, the violations of the Code of Ethics and of our Penal Law in the respects here charged, as well as in commercial cases, have continued despite admonishment by the courts.

There is no Statute of Limitations for this offense. It does not outlaw. When housecleaning commences, the question arises as to just how far and how high this court shall reach.

Respondent has been punished and humiliated, and, under the circumstances, if I believed him guilty of the practices charged I would feel that a censure by the court was sufficient; but because I do not believe him to be guilty I vote to dismiss the charges against him.

Respondent suspended from the practice of the law for a period of two years.